UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TERRY LYMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00169-HAB-SLC |
| | ) |
| UAW LOCAL UNION 2209 | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Over fifteen years ago General Motors ("GM") terminated Plaintiff Terry Lymon ("Lymon") from his employment at the GM Assembly plant in Fort Wayne, Indiana. Lymon believes he got a raw deal and that his union failed to live up to its duties as his bargaining representative. He further believes the union's actions or inactions are the result of race discrimination. Proceeding *pro se*, Lymon filed the present suit against UAW Local Union 2209 ("the Union") asserting claims of breach of the duty of fair representation and race discrimination. Not surprisingly, the Union moves to dismiss his fair representation claims asserting that they are time-barred and, in addition, seeks dismissal of the race discrimination claims asserting that any timely claims are outside the scope of his EEOC Charge of Discrimination. (ECF No. 5). The parties have fully briefed the motion and it is ripe for consideration.

**APPLICABLE STANDARD**

To survive a motion to dismiss "the complaint must state a claim that is plausible on its face." *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016) (quoting *Vinson v. Vermilion Cty.*, 776 F.3d 924, 928 (7th Cir. 2015)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim satisfies this pleading

standard when its factual allegations "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 at 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[ ]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014); *St. John*, 822 F.3d at 388.

## FACTUAL BACKGROUND

### a. Lymon's Termination

Lymon is a former employee of General Motors and was a dues-paying member of the Union in good standing while he was employed by GM. The present dispute began after Lymon sustained a severe back injury while at work[1] and was given medical restrictions that had to be met for him to return to work. (ECF No. 1, p. 3 ¶ 2). On June 10, 2004, GM contacted Lymon and advised him that a job compatible with his medical restrictions was available. Lymon reported to work on June 14, 2004, and was placed in the Latch-Install job, a job Lymon contends was incompatible with his medical restrictions. (*Id.*). Lymon discussed his belief that the job was incompatible with his restrictions with the plant medical department and Dr. Espinosa.  Dr. Espinosa sent Lymon home. Thereafter, it appears Lymon did not return to work until late July 2004.

On July 21, 2004, in accordance with ¶ 64(d)[2] of the GM/UAW National Agreement ("the CBA"), GM sent Lymon correspondence advising him that he was to return to work and that his

---

[1] Lymon's Complaint states "during the year 1998, Lymon sustained a severe back injury while working at GM…Due to the injury Lymon had been working various jobs in the GM plant that were compatible with the type of injury that Lymon sustained and that were compatible to the restrictions given to Lymon by his doctors." (ECF No. 1 at 2). Thus, it appears that since 1998, Lymon had been provided jobs by GM compatible with his medical restrictions.

[2] Paragraph 64(d) provides:

    (64)    Seniority shall be broken for the following reasons:
        …

2

failure to do so within five working days of the notice would cause him to lose his seniority. (ECF No. 1-1, p. 17). Responsive to the letter he received, Lymon returned to the GM plant on July 28, 2004. Once there, Lymon states a manager gave him an ultimatum to either perform the Latch-Install job or be terminated. Lymon responded that he could not perform the job due to his disability and was then terminated.

Lymon contends that the Union subjected him to race discrimination and unfair labor representation when "GM management put Lymon on [the Latch-Install Job] and he could not perform the job due to his injury." (ECF No. 1, p. 4 ¶ 4). Lymon also alleges that on July 28, 2004, GM ordered him back to work, revoked his restrictions and placed him on a job that it knew he could not perform. (*Id.* p. 5, ¶ 4). He claims that GM took adverse actions against him because he could not perform the job due to disability and that the Union refused him representation. Lymon contends that he asked the Union to grieve his termination but that it refused to do so and thereby "discriminated against [him] on the basis of his race and subjected him to unfair labor representation by refusing to write a grievance for [his] termination." (*Id.* p. 5, ¶ 5).

On August 2, 2004, GM further advised Lymon that pursuant to ¶ 64(d) of the CBA between the Union and GM, his seniority was broken. (ECF No. 1-1, p. 34; ECF No. 1, p. 7, ¶ 7). The correspondence further noted, "This loss resulted from failure to return to work within five (5) working days after being notified to report to work, and for failing to give a satisfactory reason." (ECF No. 1-1, p. 34). Lymon alleges that "the local union failed to represent [him] by

---

(d) If the employee fails to return to work within five working days after being notified to report for work, and does not give a satisfactory reason. Such notice shall be clear in intent and purpose. A copy of Management's notification of such loss of seniority will be furnished promptly to the Chairperson of the Shop Committee.

(ECF No. 1-1, p. 18).

3

writing a grievance for [his] being terminated a second time and for a different reason." (ECF No. 1, p. 7, ¶ 7).

On August 4, 2004, pursuant to an agreement between GM and the Union, Lymon was instructed to see an Independent Medical Examiner ("IME") who determined that Lymon was able to perform the Latch-Install job. Lymon contends that he should not have had to go to an IME because no grievance was filed on his behalf and the IME procedure is part of the grievance process. Thus, Lymon asserts that the Union discriminated against him by refusing him fair representation when GM sent him to the IME. Additionally, Lymon contends that he had already been terminated and that "GM Management, in collusion with the Union, was intent on terminating Lymon regardless of what the IME results were." (ECF No. 1, p. 6 ¶ 7). Lymon asserts that the Union further discriminated against him by failing to grieve the results of the IME stating that he could perform the Latch-Install job.

### b. Post-Termination Issues

For three months after his termination, Lymon contends that the Union refused to communicate with him. In early September through early October 2004, Lymon complained to GM management in Detroit about the Union's failure to communicate with him or grieve his termination. (ECF No. 1, p. 9, ¶ 8). Following those complaints, on October 11, 2004, Lymon met with Union committeeman, Dave Matthews ("Matthews"), at the Local Union hall. Lymon asserts that Matthews asked him to sign a blank grievance form. Lymon was not told what employment issue was being grieved and was not provided a copy of a grievance. (ECF No. 1 at. P. 7, ¶ 8). Lymon subsequently learned that the grievance asserted that GM violated ¶ 64(d) of the CBA when it terminated him.

### c. Withdrawal of the Grievance

For the next three years, Lymon's grievance inexplicably laid dormant. (ECF No. 1, p. 10, ¶9). On June 15, 2007, Matthews, now Union Shop Chairman, withdrew Lymon's grievance challenging Lymon's termination. Lymon was not notified of this action by certified mail, as was apparently the Union's practice, or by any other means. Lymon alleges that Matthews discriminated against him on the basis of his race by refusing to provide notice by certified mail that his grievance had been withdrawn or that he had appellate rights under the UAW Constitution to challenge the withdrawal of his grievance.

### d. Lymon's Appeal of the Withdrawal of the Grievance

Nearly four years later, on April 11, 2011, Lymon learned that the grievance challenging his termination had been withdrawn after he inquired about it with the then-Union Shop Chairman (no longer Matthews). (ECF No. 1 p. 12, ¶ 10). The Shop Chairman was unable to find a record showing that Lymon had received notice of the Union's withdrawal of his grievance and thus, he sent Lymon a certified letter on April 19, 2011, indicating that his grievance had been withdrawn on June 15, 2007. (*Id.*; ECF No. 1-1, p. 51). Lymon then appealed the withdrawal of his grievance through the Local Union asserting violations of the UAW Constitution. After a hearing on his appeal, the Union denied Lymon's appeal asserting Lymon failed to timely appeal the withdrawal of his grievance pursuant to Article 33, Section 4(c) of the UAW Constitution. (*Id.*).[3] On July 6, 2011, the local Union issued correspondence to Lymon by certified mail advising him that his UAW Constitution appeal was untimely. Lymon signed for this correspondence on July 11, 2011.

Lymon eventually advanced his UAW Constitution appeal though the appeals chain to the International Union and ultimately to the Public Review Board, both with no success. The Public

---

[3] Under Article 33, Section 4(c), an appeal must be filed with the Union within 60 days "from the time the appellant first becomes aware, or reasonably should have become aware, of the alleged action or decision appealed." (ECF No. 1-1, p. 53).

5

Review Board is the final step of the UAW appeals procedure. Lymon was notified of the Public Review Board's decision on December 17, 2012.

### e. Lymon's Charge of Discrimination

On April 23, 2012, Lymon filed a dual charge of discrimination with the Indiana Civil Rights Commission and the EEOC (EEOC Charge, ECF No. 1-1 at p. 2) against the Union. In that charge, Lymon asserts that he suffered race discrimination as follows:

> I.   On March 22, 2012, Respondent denied my right to equal representation.
> II.  I believe Respondent discriminated against me on the basis of my race (African American) because:
>   A. On the above-mentioned date, Respondent informed me it was taking my grievance under advisement; however, I am certain Respondent's intentions are to deny my grievance claiming that I failed to initiate the process in a timely manner.
>   B. I assert that I am the only individual who has had a grievance withdrawn by Respondent and was not notified; therefore, there was no way for me to have been able to stay within the ninety (90) day time frame, which subjected me to a denial of equal representation.

Lymon was issued a Notice of Right to Sue letter on March 27, 2020 (ECF No. 1-1, p. 1). He commenced this suit on April 21, 2020.

## DISCUSSION

Lymon brought this action against the Union for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* as well as for breach of the Union's duty of fair representation under the National Labor Relations Act, 29 U.S.C. § 151, *et. seq*. Lymon alleges that the Union breached its duty of fair representation and discriminated against him on the basis of race for a whole host of reason including: belatedly filing a grievance related to his termination, subsequently withdrawing that grievance, failing to communicate with him, and failing to provide him notice of the withdrawn grievance so he could timely execute his appeal rights. In response,

the Union argues that the Complaint must be dismissed as the claims asserted therein are untimely or outside the scope of the Charge of Discrimination and thus, Lymon has pleaded himself out of court. [4] The Court turns now to these arguments.

### A. Breach of Duty of Fair Representation

When a labor organization is selected as the exclusive representative of the employees in a bargaining unit, "it has a duty, implied from its status under § 9(a) of the NLRA as the exclusive representative of the employees in the unit, to represent all members fairly." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998). To prevail on a claim that this duty has been breached, a member of the bargaining unit must demonstrate that the Union's conduct toward him was arbitrary, discriminatory, or in bad faith, and that his underlying grievance would have been meritorious. *Id.*; *see also Ooley v. Schwitzer Div., Household Mfg.*, 961 F.2d 1293, 1302-04 (7th Cir. 1992). However, a duty of fair representation claim is governed by a six-month statute of limitations, *Renneisen v. Am. Airlines, Inc.*, 990 F.2d 918, 925 (7th Cir. 1993), which accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered," the alleged breach. *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999). !!

There is little question but that Lymon's claims against the Union for breach of the duty of fair representation are time-barred. Lymon asserts repeated breaches by the Union in 2004, 2007, and 2011 – all of which he was aware of years before he filed the present complaint in April 2020. Lymon's Complaint and supporting documents clearly establish that he knew or should have

---

[4]The statute of limitations for an unfair representation claim is a non-jurisdictional affirmative defense. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 472 (7th Cir. 2020). Although affirmative defenses normally need not be anticipated or negated in a complaint, if a plaintiff pleads facts that show that his claim is time-barred, he can "plead[ ] himself out of court." *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718–19 (7th Cir.1993) (internal citations omitted) ("A complaint that on its face reveals that the plaintiff's claim is barred by a statute of limitations ... can be dismissed on a motion to dismiss.").

known about all of the facts underlying his fair representations claims at the very latest on July 11, 2011 when he received notice that the Union was taking no further action on his appeal. Thus, his claims that the Union breached its duty of fair representation in 2004, 2007, and 2011 are barred by a minimum of nearly 9 years and a maximum of 15 years.

Nevertheless, Lymon asserts that a 300-day limitations period, the same period applicable for Title VII claims, applies to his duty of fair representation claims because his fair representation claims also give rise to a "systemic continuing violation of Title VII." (ECF No. 11 at pp. 5-7). Lymon is corrects that a breach of the duty of fair representation can also serve as a basis for a Title VII claim, but the fair representation claims are "independent of and separate from the Title VII claim." *Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 550 (7th Cir. 1987). For this reason, courts have consistently held that a six-month limitations period applies to fair representation claims even when such claims are presented in tandem with a Title VII claim. *See id.*; *Buford v. Laborers' Int'l Union Local 269*, No. 16 C 10218, 2019 WL 184052, at *10 (N.D. Ill. Jan. 14, 2019)(applying six month limitations period to fair representation claims despite Title VII claims arising from the same actions); *Stewart v. Theatrical Stage Employees Union Local No. 2*, 211 F. Supp. 3d 1094, 1103 (N.D. Ill. 2016) (applying six month statute of limitations to fair representation claims to dismiss fair representation claims as untimely despite same conduct giving rise to Title VII claims). Thus, the six-month period is applicable to Lymon's fair representation claims and those claims are time-barred.

Next, Lymon asserts that the Union engaged in a "continuing action" beginning in 2004 thereby extending the statute of limitations for his breach of fair representation claims. However, even assuming Lymon is correct[5] and giving him the benefit of all the inferences to which he is

---

[5] Whether Lymon can plausibly assert a continuing violation in any event is questionable. *See Christiansen,* 178 F.3d at 916 (7th Cir. 1999) (holding that "continued union inactivity after an initial

entitled, the continuing action would have ceased in July 2011. There is no allegation of any fair representation claim in the six-month period immediately preceding the filing of his Complaint in April 2020.  Moreover, to the extent Lymon believes that the statute of limitations period for his fair representation claims was tolled during the pendency of his EEOC charge, this is simply not so. *See Johnson*, 826 F.2d at  551 ("[T]he …fair representation claim ... is independent of a claim under Title VII, and thus the time for filing a …fair representation claim is not tolled by pursuing a Title VII claim with the EEOC."); *Bradford v. Local 2209 United Auto Workers*, No. 1:17-CV-463-TLS, 2019 WL 918510, at *3 (N.D. Ind. Feb. 22, 2019)(filing a claim with the EEOC does not toll the statute of limitations for fair representation claims). Accordingly, Lymon's "continuing action" theory does not save his fair representation claims.

Finally, Lymon asserts that the statute of limitations was tolled while he exhausted his UAW Constitution appeals. But, even this, while correct, does him no good. Lymon exhausted the UAW appeals process on December 17, 2012. Thus, at best his claims were tolled through that date, which remains well outside the limitations period.

In sum, Lymon's claims for breach of the duty of fair representation are untimely and those claims must be DISMISSED.  The Union's Motion to Dismiss the fair representation claims is, therefore, GRANTED.

### B. Title VII Claims

The Union also moves to dismiss Lymon's Title VII claims as either time-barred or outside the scope of the EEOC charge. Under Title VII, an employee has 300 days from the occurrence of an alleged discriminatory or retaliatory act to file a timely charge with the EEOC or the relevant state agency, here the ICRC. *See Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir.

---

failure to respond to a grievance request does not constitute a continuing violation of the duty of fair representation" sufficient to extend the six-month statute of limitations)

2004). The 300-day limitations period starts to run with each discriminatory act, not the point at which the consequences become apparent. *Finnane v. Pentel of America, Ltd.* 43 F.Supp.2d 891, 895 (N.D. Ill. 1999). To the extent a plaintiff attempts to bring claims that fall outside the 300-day period, such claims must be dismissed. *See Stepney*, 392 F.3d at 241; *Finnane*, 43 F.Supp.2d at 898 (dismissing Title VII allegations that occurred outside the 300-day window); *Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836-37 (7th Cir. 2008) (same).

Lymon filed his charge with the EEOC on April 13, 2012.[6] Thus, in order to be timely, the allegations in the EEOC charge must have occurred on or after June 18, 2011. Given this time frame, any allegations of race discrimination by the Union that occurred prior to June 18, 2011 are time-barred. A reading of the Complaint leaves no question that Lymon relies on events occurring between July 2004 and April 2011 to establish his race discrimination claims. Among other things, he asserts the Union failed to file timely grievances on his behalf related to his termination and his independent medical examination in 2004. He further asserts that the Union failed to pursue the one grievance it did file on his behalf, refused to communicate with him, and ultimately, withdrew his grievance without providing notice of either the withdrawal or his appeal rights, all because of his race.  These events may have given rise to race-based discrimination claims in 2004, 2007 and April 2011, but they are now time-barred since they are alleged to have occurred well before June 18, 2011. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558,(1977) ("A discriminatory act which is not made the basis for a timely charge ... is merely an unfortunate event in history which has no present *legal* consequences."). ‼

---

[6] The EEOC charge attached to the Complaint is date stamped April 23, 2012, but the text of Lymon's Complaint alleges the charge was filed on April 13, 2012. Both the Union in its briefs and the Court in this Opinion and Order construe the Complaint in favor of the earlier date.

Lymon acknowledges the 300-day limitations period but contends, again, that he is asserting a continuing violation. "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." *Place v. Abbott Labs.,* 215 F.3d 803, 807 (7th Cir. 2000) (quoting *Dasgupta v. University of Wis. Bd. of Regents,* 121 F.3d 1138, 1139 (7th Cir.1997). Thus, if the plaintiff "knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed" him, the plaintiff must sue over that act within the regular statute of limitations. *Moskowitz v. Trs of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir.1993). !!!

The continuing violation doctrine is a poor fit for this set of facts. As the Union points out in its brief, Lymon's allegations are precisely the type which would be expected to be made the subject of a lawsuit within 300 days of their occurrence.  All of Lymon's allegations prior to June 18, 2011 against the Union, be it the delay in grieving his termination, the failure to promptly pursue the grievance once it was filed, or the withdrawal of the grievance absent notice to Lymon are all discrete acts Lymon recognized as such. These were not continuing acts; each one was a separate discriminatory act Lymon was required to act on within 300 days of their occurrence. *See Place,* 215 F.3d at 808 (noting that "unlike low-level harassment that over time grows in intensity and cumulative effect" being fired, demoted, or not promoted are concrete, discrete developments). For this reason, the continuing violation doctrine is inapposite here.

This brings the Court to the one potential allegation that is not time-barred, Lymon's assertion in his Complaint that the Union's denial of his UAW Constitution appeal on July 6, 2011,

was discriminatory. This too, however, is problematic because this claim is nowhere to be found in Lymon's EEOC charge. "The proper scope of a judicial proceeding following an EEOC charge 'is limited by the nature of the charges filed with the EEOC.'" *Hopkins v. Bd. of Educ. of City of Chi.*, 73 F. Supp. 3d 974, 982 (N.D. Ill. 2014) (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). Specifically, "a plaintiff may only bring claims that are originally included in the EEOC charge or are 'reasonably related to the allegations of the EEOC charge and growing out of such allegations.'" *Id.* (quoting *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011)).

Lymon's charge mentions only that on March 22, 2012, his right to equal representation was denied when he was told that his UAW Constitution appeal was being taken under advisement when he was sure it would be denied as untimely. Lymon's Complaint and supporting documents establish that the local Union denied and completed processing Lymon's UAW Constitution appeal on July 6, 2011. Further in his response brief and exhibits thereto, Lymon acknowledges that the March 22, 2012, hearing referenced in the EEOC charge involved the International Union, not the local Union. Since the local Union's allegedly discriminatory act on July 6, 2011, is neither alleged or referenced in the EEOC charge, it is outside the scope of Lymon's EEOC charge and must be DISMISSED.

## CONCLUSION

Based on the foregoing, the Union's Motion to Dismiss [ECF No. 5] is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and against Plaintiff.

SO ORDERED on September 24, 2020.

                                     s/ *Holly A. Brady*
                                     JUDGE HOLLY A. BRADY
                                     UNITED STATES DISTRICT COURT