UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TERRY L. LYMON, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:20-CV-169-HAB |
| UAW LOCAL UNION #2209, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

> [Plaintiff Terry Lymon] asserts that, through no fault of his own and despite vigorous efforts to keep tabs on his grievance, he did not know and could not know (because of the union's stonewalling) until April 2011 that the union had sat on and then withdrawn his grievance. At that point he initiated the required internal appeals. Of course, the union may dispute Lymon's allegations, and fact development may reveal that his inquiries were insufficient or that the union's responses were more revealing. But at this stage Lymon's allegations suffice to withstand dismissal on timeliness grounds.

*Lymon v. United Auto Workers Union, Loc. 2209*, 843 Fed. App'x. 808, 809-10 (7th Cir. 2021).

With those words, the Seventh Circuit reversed this Court's dismissal of Lymon's complaint. But it also framed the timeliness issue of Lymon's Title VII claim. Now, with the benefit of fact development and the evolution of the evidentiary standard, it is undisputed that Lymon did ***nothing*** to monitor his union grievance for four years. So the Court reaches the same conclusion it did in September 2020: Lymon's Title VII claim relating to acts from 2004 and 2007 was untimely filed. And Lymon has designated no evidence that the Union denied his appeal because of his race. Defendant UAW Local Union #2209's ("Union") motion for summary judgment (ECF No. 117) will be granted.[1]

---

[1] The Union also argues that Lymon should be judicially estopped from bringing his claim because he failed to list it when he filed bankruptcy in 2014. The Court is skeptical of the Union's argument but, because the Court finds that Lymon's claims fail on their merits, it need not address this procedural hurdle.

I.     **Factual and Procedural Background**

A.     *Relevant Facts*

The summary judgment record is long and a bit of a mess. The Union has submitted a fifty-one page, three hundred and twenty paragraph Statement of Material Facts. (ECF No. 119). Lymon has filed an even longer, fifty-four page response to the Union's Statement, disputing or clarifying most of the Union's facts. (ECF No. 126). Thankfully, only a handful of facts are relevant to the outcome and those are largely undisputed.

Lymon is a former employee of General Motors ("GM") and a dues-paying member of the Union. In August 2004, Lymon was terminated from GM after an independent medical examiner found that he could perform a job that Lymon, citing medical restrictions, refused to perform. While the Union was first reluctant to file a grievance on Lymon's behalf, Union Committeeman Dave Matthews ("Matthews") submitted a grievance in October 2004.

The grievance went unresolved until June 2007 when it was withdrawn by the Union. Matthews claims that he informed Lymon of the withdrawal in a phone call three days later. Lymon denies that this phone call occurred. The parties agree that no written notice of the withdrawal was sent.

There is no evidence that Lymon contacted the Union about the grievance between June 2007 and April 2011. Indeed, Lymon admits that he has no evidence he contacted the Union between 2004 and April 2011. (ECF No. 126 at 22). Lymon does point to testimony from Matthews at what the Court believes is an administrative hearing, but that testimony establishes only that Lymon called Matthews in the weeks preceding the June 2007 withdrawal. (ECF No. 126-6 at 41).

In April 2011, Lymon called Mark Orr ("Orr"), then the Union's local leader, and asked about the status of the grievance. Orr investigated and found that the grievance had been withdrawn. Correspondence to that effect was sent to Lymon.

It was at this point that Lymon acted. He filed appeals through the local and international levels of the Union, all of which were denied. Relevant to Lymon's claims, the Union's Shop Committee determined on June 29, 2011, that the appeal was not timely filed. Lymon also dual-filed a charge of discrimination with the EEOC and the Indiana Civil Rights Commission ("ICRC") on April 13, 2012. For reasons still unclear, the EEOC did not issue a Right to Sue letter until March 2020. Lymon then filed this suit, alleging Title VII and Breach of Duty of Fair Representation claims against the Union.

**B.** *Procedural Facts*

This Court dismissed Lymon's complaint in September 2020 as untimely. (ECF No. 29). Lymon appealed. The Seventh Circuit issued an opinion in April 2021 affirming in part and reversing in part this Court's dismissal. *Lymon*, supra. The Seventh Circuit affirmed the dismissal of Lymon's fair-representation claim. *Id*. at 810-11. But for the reasons stated at the start of this Opinion and Order, it reversed the dismissal of his Title VII claim. *Id*. at 809-10.

**II.** **Legal Analysis**

**A.** *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving

3

party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.**     ***Lymon's Title VII Claim Related to Acts from 2004 and 2007 was Untimely Filed***

Under Title VII, an employee has 300 days from the occurrence of an alleged discriminatory or retaliatory act to file a timely charge with the EEOC or the relevant state agency, here the ICRC. *See Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). The 300-day limitations period starts to run with each discriminatory act, not the point at which the consequences become apparent. *Finnane v. Pentel of Am., Ltd.*, 43 F. Supp. 2d 891, 895 (N.D. Ill. 1999). When a plaintiff attempts to bring claims that fall outside the 300-day period, those claims must be dismissed. *See Stepney*, 392 F.3d at 241; *Finnane*, 43 F. Supp. 2d at 898 (dismissing Title

4

VII allegations that occurred outside the 300-day window); *Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836-37 (7th Cir. 2008) (same).

Lymon bases his Title VII claim on three sets of events: the Union's representation around his 2004 termination, the withdrawal of his grievance in 2007, and the denial of his appeal by the Union's Shop Committee in June 2011. Lymon did not file his charge of discrimination with the EEOC and the ICRC until April 2012, so only the June 2011 appeal denial is facially within the 300-day filing period. Lymon, then, needs to identify some legal basis to save the 2004 and 2007 events.

The first legal basis advanced by Lymon is the continuing violation doctrine. To avail himself of the continuing violation theory, Lymon must show "the harm about which [he] is complaining is part of a pattern of conduct, and [he] 'was reasonable not to perceive [his] working conditions as intolerable until the acts of harassment had, through repetition or cumulation, reached the requisite level of severity.'" *Shanoff v. Ill. Dept. of Hum. Servs.*, 258 F.3d 696, 703 (7th Cir. 2001), *citing Russell v. Bd. of Trs. of the Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001), and *DeClue v. Cent. Ill. Light Co.*, 223 F.3d 434, 435-36 (7th Cir. 2000). Although often allowing a plaintiff to find refuge in the continuing violation theory on a hostile environment claim, the Seventh Circuit generally rejects such relief for allegations of a specific action like a firing, a suspension, or a refusal to promote—i.e., defined acts that happen on a particular date. *Shanoff*, 258 F.3d at 703.

As the Court noted in its dismissal order, the continuing violation doctrine "is a poor fit for this set of facts." (ECF No. 29 at 11). The doctrine applies when the claimant is the frog in a pot—unaware of his situation until the water in the pot is boiling. That's not Lymon. Instead, the withdrawal of the grievance and the alleged failure to inform him of the withdrawal, both of which

5

occurred in June 2007, were discreet acts.[2] They were not continuing in any legal sense. And there is no event within the 300-day filing period that demonstrated the discriminatory nature of these discreet acts. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999) (doctrine applies when "discrimination may only be recognized as actionable in light of events that occurred later, within the period of the statute of limitations").

Lymon points to no authority, from this or any other circuit, that applies the continuing violation doctrine to similar facts. The Court's own research reveals none. The Court cannot conclude, then, that the continuing violation doctrine saves Lymon's otherwise untimely claims.

The second legal basis, and the one identified by the Seventh Circuit, is the doctrine of equitable tolling. "The doctrine may extend the statute of limitations if, despite all due diligence, a plaintiff cannot obtain the information necessary to realize that he may possibly have a claim. Equitable tolling requires a court to consider whether a reasonable person in the plaintiff's position would have been aware of the *possibility* that he had suffered an adverse employment action because of illegal discrimination." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 860-61 (7th Cir. 2005) (citation omitted). The Supreme Court has cautioned that equitable tolling in the context of Title VII is "to be applied sparingly." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The problem for Lymon is the diligence requirement. "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (cleaned up). The record shows a gap from mid-2007 through April 2011 where Lymon

---

[2] Lymon does not argue that the 2004 events are saved by the continuing violation doctrine. (ECF No. 125 at 14-15).

never checked on the status of his grievance. Four years' inaction is not diligence under any definition. *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001) (eighteen-month delay "flunks equitable tolling").

Lymon does nothing to explain this gap. He notes that he "was in contact with the Union making inquiries regarding his grievance," (ECF No. 125 at 19), but the cited evidence points only to calls in mid-2007. That contact cannot, and does not, satisfy his diligence requirement. With nothing else to explain the four-year gap, the Court finds, as the Seventh Circuit suggested, that Lymon's "inquiries were insufficient." Lymon failed to file his EEOC/ICRC claim within 300 days of the alleged discriminatory conduct. Summary judgment in the Union's favor on the 2004 and 2007 allegations is appropriate.

**C.    *Lymon Cannot Demonstrate Pretext for the Denial of his UAW Constitution Appeal***

Finally, Lymon asserts that the Union violated Title VII by discriminating against him because of his race in the denial of his 2011 UAW Constitution Appeal. Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies created by *McDonnell Douglas. v. Green*, 411 U.S. 792 (1973). *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *Smith v. Chicago Transit Auth.,* 806 F.3d 900, 905 (7th Cir. 2015) (noting the *McDonnell Douglas* framework is just "a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence – evidence that similarly situated employees not in the plaintiff's protected class were treated better – would permit a jury to infer discriminatory intent."). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas* a court should assess the case in those terms. *Id.*; *see also Ferrill*

7

*v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced).

Still, in all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (instructing courts to stop separating "direct" from "indirect" evidence and instructing, instead, that the test is "simply whether the evidence would permit a reasonable factfinder to conclude the plaintiff's [protected status] caused the discharge or other adverse employment action). *Liu v. Cook Cty.*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.").

Under the burden shifting methodology, Lymon must first establish several prima facie elements of discrimination. Lymon must show that: 1) he is a member of a protected class; 2) he was meeting his employer's legitimate performance expectations; 3) he suffered an adverse employment action; and 4) other similarly situated employees who were not members of the protected class were treated more favorably. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

If Lymon establishes a prima facie case, the burden of production shifts to the Union to offer a permissible, nondiscriminatory reason for the adverse employment action. *Id*. If the Union carries this burden, Lymon must show that the Union's purported reasons are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives. *Id*. at 143 "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

against the plaintiff remains at all times with the plaintiff.'" *Id*. (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Here, the Court finds that it can resolve Lymon's claims by going straight to the pretext inquiry. *See Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990) (where plaintiff has not shown pretext, it is not necessary to decide whether a prima facie case has been made). The Union's stated reason for denying Lymon's appeal was that he failed to file an appeal within the sixty-day timeframe required by the UAW Constitution. The Union also determined that the timeframe could not be tolled because Lymon "reasonably should have become aware of Matthew's 2007 decision to withdraw Lymon's grievance more than 60 days before he initiated his May 16, 2011[,] internal appeal of that decision with the Local Union." (ECF No. 121 at 20).

This logic sounds strikingly like this Court's conclusion in Section (II)(B) above. The undisputed fact that Lymon refuses to address is his four years of inaction. And he cannot point to a similarly situated comparator with an equally long period of ignoring their rights.[3] The Court cannot find that the Union's reliance on Lymon's inaction was a lie when the Court has resolved his claims on the same basis. Lymon has failed to show pretext, and his Title VII claim related to the denial of his UAW Constitution appeal fails.

### III.    Conclusion

For these reasons, the Union's motion for summary judgment (ECF No. 117) is GRANTED. The Clerk is DIRECTED to enter judgment for the Union and against Lymon.

---

[3] Lymon repeatedly points to the Union's handling of an appeal by Linda Berning. But even if the Court ignored all the other reasons why Berning and Lymon are not similarly situated, the fact would remain that the period between the withdrawal of Berning's grievance and her appeal was a year and a half, which is less than half of Lymon's. (ECF No. 119 at 45-48).

9

SO ORDERED on March 19, 2024.

                                               s/ *Holly A. Brady*
                                               CHIEF JUDGE HOLLY A. BRADY
                                               UNITED STATES DISTRICT COURT